Good morning, Your Honors, and may it please the Court, Eric Pettit on behalf of Plaintiffs and Appellants. I would like to reserve three minutes of my time for rebuttal. All right, what's your clock? The right to petition is one of the most precious of the liberties safeguarded by the Bill of Rights. This case involves the Washington State Housing Finance Commission's improper attempt to regulate the transfer of investor interests in the Federal Low-Income Housing Tax Credit, or LIHTC, program and to do so based on protected litigation conduct. Plaintiffs have been injured because they have been directly targeted by the Commission because of their petitioning activity, but the District Court denied plaintiffs an opportunity to have their claims heard on the merits based on the non-jurisdictional doctrine of prudential ripeness. The ruling below is wrong for three reasons. First, the District Court failed to analyze each of plaintiffs' claims individually as it was required to do. Second, most of plaintiffs' claims are facial challenges that do not require further factual development. Third, the District Court misinterpreted the challenged rule to conclude incorrectly that it prohibits the Commission from blocking a transfer based on protected petitioning activity. This Court accordingly should reverse the judgment below and remand the case for adjudication on the merits. Unless there are any questions at the outset, I'd like to summarize the Federal LIHTC program and provide some context as to the events giving rise to the challenged rule. I'll then address the rule itself, the District Court's ruling on justiciability, and the Commission's new arguments regarding constitutional ripeness. And finally, I will briefly address the merits of plaintiffs' claims. The Federal LIHTC program seeks to incentivize private investment in low-income housing. It does this by allocating federal tax credits to housing projects that maintain affordability restrictions and other program requirements for at least 30 years. These projects are typically owned by partnerships between developer general partners and investor limited partners. LIHTC investors provide the capital necessary to fund the projects but do not operate or control the properties. Congress has delegated to state housing agencies such as the Commission the limited authority to allocate tax credits to individual projects and to monitor compliance with program requirements. Prior to the Commission's adoption of the challenged rule, state housing agencies have never sought to regulate the transfer of LIHTC investor interests. Plaintiffs are in the interest in LIHTC partnerships throughout the country, including in the state of Washington. In 2017, multiple general partners in Washington sued plaintiffs for refusing to relinquish their LIHTC interests. One of those general partners was a nonprofit entity known as SHAG who employed the daughter-in-law of the Commission's executive director. Plaintiffs prevailed in federal court and successfully blocked the general partners' efforts to divest them of their ownership interests. Undaunted, the general partners turned to the Commission for assistance. Although the Commission concedes that it has no regulatory authority over these disputes, it pursued a two-pronged response that it described as an assist to the development community. First, the Commission adopted the original version of the rule that plaintiffs are challenging in this lawsuit. That version categorically and permanently barred any investor who engaged in litigation to protect their LIHTC ownership rights from any future participation in the LIHTC program in Washington. Second, the Commission published a report that was originally drafted as an amicus brief supporting SHAG's appeal. The report criticized judicial decisions by federal judges in Washington upholding the rights of LIHTC investors and encouraged courts to resolve such disputes in favor of general partners. After plaintiffs initiated this action, the Commission revised its rule in an effort to avoid the glaring constitutional deficiencies of the original version while still allowing the Commission to continue targeting plaintiffs. The current version, which can be found on page 132 of the excerpts of record, requires any potential transferee of a LIHTC investor to provide information regarding its protected litigation activity and states that, quote, prior judicial findings against a party will be considered to evaluate the party's fitness as a potential project partner within the LIHTC program. Although the rule claims that the Commission will not penalize any party's mere exercise of legal rights, including the right to have partnership disputes resolved through litigation, the Commission has repeatedly threatened to block transfers to plaintiffs based on positions they have taken in litigation. Plaintiffs have asserted multiple constitutional challenges to the Commission's rule, including claims based on the Supremacy Clause and the Petition Clause of the First Amendment. The District Court, however, declined to address the merits of plaintiffs' claims and instead ruled that all of the claims were prudentially unripe. In assessing prudential ripeness... Let me ask you this. If we agree with the District Court's prudential ripeness analysis, are there additional facts that you have not, to date, proffered, either below or before this Court, that you would allege? I'm talking about the leave to amend question. Yes, Your Honor. To the extent that the Court finds that the prudential ripeness was rightly decided, then the plaintiff should have an opportunity to amend their complaint because the District Court predicated its decision on a finding that the plaintiffs had not adequately alleged their intention to seek a transfer application in the State of Washington, and in the absence of those allegations, that there was not a prudentially ripe claim. Can you give us a preview of what additional facts you would allege? Absolutely, Your Honor. I think that, you know, plaintiffs are in the business of acquiring investor interests in these types of projects, and they would be able to provide an amended complaint that included allegations regarding potential projects where the plaintiffs would be seeking to obtain an interest in those projects. Counsel, that seems a little, very kind of speculative, because you're not saying that you would allege that you have acquired an interest in a property, and therefore you're being injured by the fact you have to apply for this transfer, and it seems that the machinery is rigged against you, that it won't be approved based on this policy. But you have, your client has not even, it doesn't sound to me, cannot even allege that it actually has acquired a general partnership interest in the State of Washington. Well, the issue, Your Honor, is that our clients are unable to acquire an interest in Washington without having to go through the Commission's application process. But you first acquire, or you first make a deal, and then you go and ask for the transfer? Is that how it works? Well, you'd need to, first of all, you would need to find a willing participant who was willing to sell you their interest in the project. Right, that's always the case. Yes. And then before you'd be able to enter into any transaction, you'd need to seek an application from the Commission in the State of Washington asking them to approve the transaction before the transaction could be consummated. If you consummated the transaction before you received that approval, then there are negative consequences that the Commission will not recognize the tax credits, and there are other... I'm sure your clients have very good corporate lawyers as well, and could make a deal contingent on getting the transfer approved? Well, the problem, Your Honor, is that it's really, there's not an opportunity to find a project, a counterparty, because the Commission has indicated that it intends to deny transfer applications against the plaintiffs based on their conduct. And our position is that the injury has already occurred. The injury is the... Is it your argument that your investors in your, the potential investors in your client are chilled from investing in this type of project in Washington because of the existence of this policy? No, our contention is that the injury is that we are put in a position where we have, where the plaintiffs need to make a decision between seeking to enforce their contractual rights in projects in which they are already involved, or forego their ability to participate in projects in the future. And so the injury is actually occurring right now based on the the Commission provide a description of all of the litigation activity that we've been involved in in the past, and to seek the Commission's blessing that they will agree to a transfer notwithstanding that litigation activity. That is the injury. There's Supreme Court case law that establishes that, you know, in the First Amendment context, the burdening of speech itself is an injury, and that self-censorship in the interest of not being subject to a government regulation is sufficient to assert an injury. And so that's really the issue is that... Is that true in the commercial context as well? It is, Your Honor, because what we're talking about here is petitioning activity, the ability to seek redress from the courts. And even if the underlying... I mean, it's often the case that litigation will involve, you know, business disputes or other types of commercial disputes, but the court has never said that petitioning activity is not protected by the First Amendment or has less protection from the First Amendment if the underlying nature of the dispute is commercial. The court has said that, in certain instances, commercial speech is not subject to the same level of protection as other types of speech. But really, what we're talking about here is petitioning activity, the ability to go to court to have our rights addressed. And so... The problem with your argument is that nothing in the text of the policy really suggests that protected activity would be a basis for rejecting a transfer application. And there really hasn't been an allegation thus far that I could see of any anticipated future applications. I know that in the briefing, you indicated that if leave to amend were to be granted, you could allege more specific facts alleging an intent to seek transfer applications in the future, but it's all highly speculative. Your Honor, we are intending to seek transfer applications in the future. The issue is that in the face of this rule, it precludes us from the opportunity to do that. And if we're not able to have an opportunity to challenge this rule now, the ability to seek a transfer application in the future will be limited because, like I said, we won't be able to have a commission that is willing to enter into this type of an agreement with us when they know that the commission is going to reject any application. And the rule itself does require the commission to consider the prior judicial activity, excuse me, the prior litigation activity of the party. And specifically, it's not something that, you know, the commission says repeatedly in its brief that they may consider litigation activity, but the rule says that they're required to consider litigation. Where does it say that? It's on page 132 of the excerpts of record, and I'm sensitive to my, I'm already at my 3 minutes and counting, but it's on page 132 of the excerpts of record. So page 132 tells us why a prospective partner would think that the transfer application would be denied. It says that prior judicial findings against the party will be considered to evaluate a party's fitness as a potential project partner within the LIHTC program. And the commission has made multiple statements, including in this litigation, and including as recently as last week in the supplemental authority that they submitted, in which they interpret this provision as permitting them to deny a transfer application based on their determination that a litigation outcome was not considered to be consistent with their views of the goals of the LIHTC program. And so I think that you need to take into consideration all of the statements that the commission has made as to how it intends to apply this rule, and that the rule itself specifically allows them to apply the rule in this way. What they've said is, you know, and if you look at the history, you know, I've been involved in these cases since 2017. I litigated the cases below. We were able to prevail in court, and then the commission stepped in and passed a rule and says, well, if you, if you win in court, then we can just bar you from participating in the future. And every iteration of the policy, or excuse me, of the rule have, you know, come from that point, that perspective. And, you know, granted, they've, you know, made significant efforts to try to insulate it from constitutional scrutiny. However, the rule continues to allow them to deny a transfer application based on protected litigation conduct. And that is, runs afoul of the First Amendment. And that injury is here now, and we should have an opportunity to have our claims considered on the merits, rather than having them dismissed in a non-jurisdictional prudential ripeness context. And I see my, with my best intentions to reserve three minutes, I see I've run past that. I will give you some more time to, for rebuttal. You were responding to our questions, so. Thank you. You will have some rebuttal time. I appreciate that. Thank you. Okay, Mr. Flavaris. You may proceed. Thank you, Your Honor. And may it please the Court, Taki Flavaris of Pacifica Law Group on behalf of the Commission. Your Honors, as both a constitutional and prudential matter, federal courts do not adjudicate abstract and speculative challenges like this one. Here Alden Torch is challenging the Commission's written guidance on when it will consent to a proposed transfer of interests for previously approved projects within its LIHTC program. And yet, Alden Torch has not applied for such a transfer. It identifies no specific plans to seek such a transfer. Its challenge is based on speculative fear about how the Commission will apply the transfer policy in a way that is not reflected in the text of the policy itself, and that would be contrary to the Commission's representations to this Court. And the Commission has not previously applied the transfer policy in the way that Alden Torch fears it will, namely to punish litigation. There are no examples of that happening. And so for all of these reasons, this case is unripe in every way that a case can be unripe. First, Alden Torch can't satisfy the firm prediction rule, which applies to a rule that confers a benefit as here, because it is not inevitable that if Alden Torch actually finds a project it wants to enter into, that its application would be denied based on litigation activity. So it seems as though, and I'm not questioning the validity of this policy, that the stated goal of Washington is that it wants to insure low-income housing for the longest possible time. And you're looking at a business practice where, by purchasing the general partner's interests, ultimately the low-income housing will be sold for a higher price and will no longer be low-income housing. So that, in fact, this is a disfavored, I'm saying antitrust holdings, but it doesn't seem very likely that Amtec's holdings would ever get such a transfer approved, regardless of almost what the rule says, because of the overarching goal of the policy. Yeah. Judge Worla, it's a good point that there are concerns, and we've acknowledged those in the briefing, that yes, the Commission has concerns about this course of conduct that has occurred in the program. But a couple points on that. One is that the crux of this And so it's not about whether Alden Torch will or will not be granted consent to come in. It's why. That's what the firm prediction requires. It would have to be that they're not let in because of litigation, protected petitioning activity, which is just not the case. So that's one part of it. And then the other is, this is the heart of rightness, it still requires an actual review of the circumstances. And there could be a situation where, suppose a project is in dire straits, and they've searched for new investors, and Alden Torch is the only investor willing to come in, and there's a review of the terms of the deal, and they look very protective of affordable housing. Maybe Alden Torch has changed its conduct or has a different course of conduct. They would have an opportunity to explain all of that. So there is a possibility, but it depends on the actual transfer. And I think we should clarify, what is the policy? Opposing Council was pointing to a form, a certification form. It's at ER 131 to 32. That is not the policy. The policy is at ER 119 to 20. The policy says, the commission is reserved the right to determine, once it approves a project and gives credits, if someone else wants to come in, it is reserving the power based on whether the proposed transfer will ensure that existing obligations will be met and will further the purposes of the program. Judge Worley, you noted the purpose, the main purpose is preserving affordable housing for as long as possible. That's the policy. What Council keeps referring to is a form that the commission has established, which says, for all the parties involved, including the new one that you are proposing to come in, and again, changing the nature of what has been approved. And again, the commission approves, the LIHTC statute requires consideration of sponsorship characteristics, sources of funding, economic viability. So it approves. Now they want to change the nature of what was approved. So the commission says, okay, here's our form for the entities who are involved to fill out, to give us information, so that we can apply the policy to the particular transaction. And in that form, there is a list of certifications, and that's what we're talking about, and they relate to financial solvency and they relate to track record of conduct in this program. What is the specific point in the certification form that relates to litigation? Yeah, so I think the most important one, and the one that's probably most in line, is section 132, which says, can you certify that this entity has not been found by a court to have caused actionable harm, damage, or loss to a LIHTC project partner or sponsor, or to have violated or breached a LIHTC requirement, covenant, or partnership obligation? And then the form clarifies, if you cannot check the box, it doesn't mean there's an automatic denial. It's just, we want more information. So it's saying, is there anything here for us to know about? If so, tell us about it. And that's where, and then the commission says, this is the sentence where it says, prior judicial findings against the party will be considered, and so this is explaining, when you're giving us these findings, here's how we're going to look at them, to evaluate the party's fitness as a potential project partner. And so if you had someone coming in. What does that mean, prior judicial findings against this party? Right, so it means if there was a court finding, and I think, what is a judicial finding? It's where a court has made clear the basis for its rulings and its judgment. There's a civil rule specifically about findings. So when the parties have gone through the crucible of litigation, and then we're on the other end, and now there's a finding about what happened here, and is one party liable or not? And you're liable for these reasons. That would be a finding. And I'd point the by agencies. Courts have found something occurred, the parties had a chance to dispute it, and now it will be considered as having been resolved. And again, it's not a, if you've got a finding, we're done, it's we just want information, tell us about it. Because, and what the commission is after, is what is the party's track record of conduct in this program? Because the commission approved different partners at the outset to be involved. And it assessed the sponsorship characteristics as required. It assessed the funding. Now, a new party wants to enter, so the commission wants to know. What is your track record in this program? And then it will consider that along with the particular reasons for this proposed transfer. But turning back to the ripeness, the reasons this is not ripe. I mentioned the firm prediction rule, and again, this is a benefit conferring rule. And that really resolves the case, because this is all about punishing litigation. The commission is, I think there's a conflating here between findings about conduct that occurred, and then petitioning activity, filing a lawsuit. How one conducts a discovery, for example. The commission doesn't care about any of that. It's not looking at that. It's looking at conduct. And so, what Alton Torch seems to be saying is, if we litigate and the court finds that we engaged in certain conduct, you can't consider it. We're shielded from that because it was involved in litigation. And there's just no basis for that. So first, firm prediction rule. There's no basis here to think that the commission is going to punish litigation. But the checklist that we've been discussing at ER 132 does specifically say that the evaluation is really to the party's fitness as a potential project partner, and there will be no penalty imposed by the commission for the exercise of legal rights, including the right to have disputes resolved through litigation. So then I'll ask you the same question that I asked opposing counsel, which is the question of leave to amend. I know you had argued in your case that leave to amend was the phrase used, but we have plenty of case law saying that under Rule 15, leave to amend should be generously or liberally granted. So what is the primary ground that you're resting on, futility? Futility is one ground. And you asked are there any new facts, and there aren't any. So that's another. Not only is it futile because we look at the text of the policy and the American cargo as a good example of that, but in addition to that, there are no new facts to be pleaded that would make a difference here. We heard that, and there have been multiple opportunities. I do also think there is a too little, too late piece here, Judge Wynn. I agree that leave to amend generally should be granted liberally, but when a party has already amended, has not suggested that it is going to amend or has a desire to amend, and then doesn't seek to reopen the judgment, and then only on appeal raises it for the first time, and then can't say what these new facts are going to be that would make a difference, then there's no basis to remand for any further litigation. And part of that, we note in the Prudential Ripeness Hardship Inquiry, one of the factors is that the Commission is facing hardship by having to continue litigating in a vacuum this policy and to basically litigate this speculative fear about how the policy will be interpreted without any actual developments that have occurred to inform the court or to provide a basis for it, the core theory that they're pushing here. One other thing, Judge Wynn, that you noted about this, that you were going to on this form that I wanted to point out is the Commission also disclaims that it's going to punish litigation in the form. So that's yet another reason why this is baseless. But going back to the big picture, firm prediction rule, even if this weren't a benefit-conferring rule, there's no concrete plan. Judge Wardle, I think your questions were getting to that about, you know, what's the plan here? What is this project? We have nothing about a project that's being considered or any particular third parties. And I would note that below, even, Alton Torch was seeking to oppose an extension of time for the Commission to answer. And one of the elements there was prejudice. And there was even a declaration submitted from someone with Alton Torch. And there was no, nothing about actual prejudice, hardship, projects, anything, no specifics whatsoever. I did want to touch briefly on this notion of self-censorship, because I think that's one of these sort of last pieces of, well, yeah, maybe there hasn't been an application yet, but there's self-censorship going on. And I would just say a few things about that. One is the firm prediction rule still has to be satisfied. That's not a way out of that. Two, the fear has to be well-founded that results in the chilling. And this court made that clear in Wolfson, for example. Mere assumption that the agency is going to do what it says. And when it disclaims the theory that's being pushed, there's no basis, you know, the chilling is unfounded. We've cited numerous cases showing that. And then the other point is they say chilling. And as Wolfson said, a bare allegation of chilling is not enough. There's no specifics. What is this chilling? It goes back to the same point, that there's no details. And the last thing on this I want to note, that I think a question was asked, I think Judge Wardlaw, you asked about this, the commercial interests here. The Supreme Court has said that while yes, courts relax the standards a little bit in the First Amendment context because of potential for chill, that does not apply when you have a purely commercial situation, because it is not likely that a party is going to hold back when that's all that's at stake. And that's especially true here. And adding on top of that, all we're talking about is participation in a program, in a program that subsidizes affordable housing. And so, you know, the chilling theory really does not apply here in the first place. So I think I covered the main points that I wanted to. If there are any questions, further questions, I'm happy to answer them. Otherwise, I'll conclude. It was just a couple comments. The Commission, the Commission here is interested in promoting and preserving affordable housing for as long as possible, not in punishing litigation conduct. That is why there's no real threat here of its transfer of policy being applied in the way that Alton Torch is suggesting. And there is no real dispute here for the Court to resolve. Essentially, Alton Torch won't take yes for an answer and is asking the courts to order the Commission not to act in a way it has already said it is not going to act. That is the essence of an advisory opinion. Federal courts do not entertain that kind of claim or challenge. So for that reason, we ask respectfully that this Court affirm. All right. Thank you very much, Counsel. Mr. Pettit, I'll give you three minutes. Thank you, Your Honor. So first, I want to just mention to clarify what is being discussed here is the transfer of interests of a passive investor in these projects. So we're not talking about a purchase of a general partner interest where they will have some control over the compliance with the LIHTC program. These types of transfers have never been regulated before by any housing commission in the country. And the reason why is that they don't have anything to do with the allocation of the tax credits. They don't have anything to do with the monitoring of program compliance. There was an amicus brief submitted in support of the Commission's position. And I think it's telling that not a single state housing agency anywhere else, the other 49-plus in the country, have signed on to the position that the Washington State Housing Commission is taking here, which is that it should have the ability to regulate investor-level transfers, which really have no bearing on maintaining affordability or maintaining the long-term affordability of this housing. These properties are subject to restrictive covenants that run with the land. No matter who owns them, they need to be complied with. And so this is really about disputes between developers and investors over contractual rights and the economic benefits that go with those contractual rights. Secondly, opposing counsel mentions a couple of times the need to satisfy the firm prediction rule. The firm prediction rule only comes into play if we're dealing with as-applied challenges. And the important thing to remember here is that these are facial challenges, at least primarily the claims that are brought by my clients are facial challenges. The Supremacy Clause challenge says the Commission doesn't have the ability to enact this transfer policy at all, independent of whether they consider litigation conduct or don't consider litigation conduct. Congress delegated very limited authority to the Commission, and the Commission does not have the authority to regulate this policy at all. There's no further factual development that's needed to adjudicate the merits of that claim. And similarly, the First Amendment claim, it's not whether they will submit a transfer application and that transfer application will be denied. It's the criteria on which the Commission evaluates the transfer application that's being challenged. And the facial challenge is that the First Amendment prohibits the Commission from using litigation activity as a basis for denying a benefit. And the B, E, and K case says that the Supreme Court has held that unless the litigation conduct is objectively baseless and subjectively motivated by an unlawful purpose, you can't penalize litigants based on that activity. And then Judge Wynn, you're absolutely right. Leave to amend is liberally granted. There are cases that talk about the importance of preserving the finality of judgments. But in this situation, you know, we've amended once before. We amended because the Commission changed its policy, not because there was some shortcoming in our earlier pleading. And there wasn't a ruling on the merits. There was a determination that this was not prudentially right to be heard. And so there would really be no prejudice in allowing an opportunity for the plaintiffs to amend their complaint and to make further allegations that would establish that they will be seeking a transfer application and that transfer application will be denied. And just to conclude, you know, it's a bit of a bitter irony here that the Commission is seeking to deny the plaintiffs an opportunity to be heard on their claim that the Commission is unconstitutionally burdening their opportunity to seek redress from the courts. And we would ask that the court find that these claims are prudentially right and that the case be remanded to the court so that it can address the merits of the claims. Not that we should prevail at this level, but that we should have an opportunity to have the merits of our facial claims adjudicated by the district court. Thank you, Counsel. Amtac's Holdings v. Washington State Housing Commission will be submitted. And this session of the court is adjourned for this week.
judges: WARDLAW, NGUYEN, OWENS